We'll move to the second case, which is Travelers v. Ocean Reef 21-14509. We have Mr. Valdez for the appellant, Mr. Hassebrock for the appellee. Mr. Valdez, whenever you're ready, no hurry. May it please the Court. Good morning, Your Honors. My name is Thomas Valdez, and I represent Travelers Property and Casualty Insurance Company of America in this case. This case involves the misapplication of Florida's anti-technical statute in a manner that defeated both the letter and spirit of the statute. Okay, so let's start there, if that's where you want to start. I may have started somewhere else, but I'm happy to start there. So I'll start by laying out there that I think if I was reading this statute and no one else had ever read it before, I might agree with your reading of it. But we don't take it as that. We sit in the Court as diversity, as taking it as, well, even in the maritime context, now given our law, that we're required to apply Florida law. And so we must apply Florida law. And some of my former colleagues in Florida have seemed to have read this statute as requiring, I'm not going to say causation, but some sort of causal link between the breach of the warranty and the loss that actually happened in the case. Do you agree with that proposition or not? I don't agree. Okay, so let's look at the Pickett case, because I think that's the best case for your opposing counsel. So it's Pickett v. Woods. It was cited by everybody. We've cited it. Fifth Circuit case from 1981. There, the argument, the very argument the appellant made was this. I'm going to read it directly. And it's at pin site 1153 of the opinion. Quote, appellant argues that because the crash was due to pilot error, this was a plane as opposed to a boat, the plane flew into the ground while attempting to land in bad weather. That was the pilot error. And not the result of any malfunction, which was the warranty, because there had to be a warranty of certifiability. The failure to have a valid airworthiness certificate did not contribute to the accident, and that therefore the statute should apply and prevent the insurance company from relying on the exclusion to deny coverage. We agree and reverse. Okay, so even if that wasn't enough, they agreed with the very argument that was made, and that's made here. The court then goes on to say the statute is designed, the statute being the anti-technical provision that you're referring to, is designed to prevent the insurer from avoiding coverage on a technical omission playing no part in the loss. How is playing no part not a representation that it has to have some link playing some role between the breach of the condition and the loss that actually happened? Well, Your Honor, I think it does have to be some link, but I don't think there has to be a link of direct and proximate cause. You and I are on the same page. It has to play some role or some part, okay? Yes, Your Honor. Okay, so I'm glad we're all on the same page, or at least you and I are on the same page with regard to that. Here's the next question. This is a hypothetical. Hypothetically, would it require me to speculate or conjecture or answer a hypothetical if I were to ask you this question? In the early 2000s, the Miami Dolphins had the option of signing either Dante Culpepper or Drew Brees as their quarterback. Both were injured and free agents. If the Dolphins had signed Drew Brees instead of Dante Culpepper, they would have won one Super Bowl between then and now. That would require you to what? To speculate. It would have to, right? It's a hypothetical question. Those are conditions that did not happen, correct? Yes, sir. Okay. What kind of evidence is required in order to answer speculative, hypothetical, or conjectural testimony in federal court? Well, you have to have the type of evidence that was submitted here, Your Honor, which is evidence that shows that the actions of the party is in this case. Is the answer not expert evidence to answer a conjectural, speculative, or hypothetical question about a condition? No, Your Honor. I don't think so, at least not in this context. Here's what we've said about this very question. Quote, testimony that blurs into supposition and extrapolation crosses the line into expertise. End quote. The ability to answer hypothetical questions is the essential difference between expert and lay witnesses. In other words, a regular witness says, let's take a car accident case. A regular witness says, I was at the intersection and I saw the light was red and the yellow car crossed that and hit the pedestrian. That's classic lay witness. You don't need an expertise for that. But the expert who then comes in and says, if the light had been this way and this had happened, there would have been no injury and this would not have happened but for that, that's an expert testimony, is it not? It is in that instance, Your Honor. How is then applying to this case? How is the evidence of, if a captain was on board, a captain would have decided, and not just any captain, but a captain that is approved by travelers, that which is a Coast Guard certified, would have made the decision to put the boat in a place and that in that place, the loss, the very loss that happened here, slamming against, something come unmoored and slamming against, would not have happened. How is that not subject to expert testimony? Well, Your Honor, because we don't have to prove, we don't have to prove causation in the typical... You have to prove it played some role. Yes, Your Honor, some role. And you could prove some role by looking at the evidence that we presented in this case, which includes... That's inherently, the problem is the conditions didn't happen. So it's inherently speculative. How is it that you could present any evidence, whatever the causation standard is, direct and proximate cause, indirect cause, played some role, some causal connection, whatever it is, how can you enter that testimony without having someone speculating about conditions that did not in fact happen? Your Honor, I don't think in this case, I don't think it's speculative because of the standard that applies. Did the actions or inactions, did the breach here increase the hazard? You don't need expert testimony to establish that the breach increased the hazard. This is the problem. And this is why I think the statute, why the first part of our conversation was essential to the second part of our conversation. If it was just increase the hazard in general, I think you may be right. But if it is increase the hazard such that not complying with the warranty played a role in something happening, that would seem to require some speculative, conjectural, or hypothetical testimony about that condition happening. And that, we have said, is classic expert testimony. Your Honor, to the extent there's expert testimony in this case from the opposing side, that testimony is based completely on this causal... Here's the problem, though. You're the one with the burden. So once they file summary judgment, they could have sat and twiddled their thumbs. You were required to come forward with some evidence. So even if their expert was the devil himself, you still were required to come forward. So what evidence did you have, expert testimony, that would have met your burden here? Well, Your Honor, amongst, I think the other testimony adds to it, but certainly the testimony of Captain McCall, the captain that... So here's the issue. I've read, I read Captain McCall's entire deposition. And I actually think there's some things in there, I don't know if it gets you over the line, but gets you at least close to the line. The problem is I've looked through every docket entry. We've looked through every docket entry. And I cannot find anywhere where Mr. McCall, Captain McCall is listed as an expert or was disclosed as an expert. Is that right? Your Honor, I didn't see anywhere that he was disclosed as an expert. But the parties here, there was no dispute between the parties here regarding his expertise, neither travelers nor opposing counsel. I know, but we have these rules that are in place to put people on notice about the kind of evidence that's there. And Rule 26, I can cite you chapter and verse, I think it's subsection A, subsection 2, has very detailed expert disclosure requirements. And that includes that even with regard to a hybrid expert, you're required to summarize the testimony, give the name and CV, so that the other side is unnoticed that this person is going to be used as an expert, right? That's correct, Your Honor. And that didn't happen, you agree that didn't happen here? With regard to Captain McCall. I agree that that didn't happen. However, plaintiff was on notice that Captain McCall was going to be a witness. Plaintiff had the opportunity to take his deposition. So everybody was on notice of the testimony that he was going to give. They were on notice of the fact that he was an expert. So to the extent that he's not listed as a hybrid witness, everybody was certainly on notice of the fact that he had expertise in this area and testified to it at length. Except the most critical person, and that's the district court. So how's the district court judge, who's trying to make sense of this all in weighing this and looking at the record, supposed to intuit that you all want to treat this person as an expert? I mean, there's lots of reasons attorneys do things. A district court judge can't sit there and say, well, maybe they're trying to make this person an expert, I don't know, and should I consider it? All they can do is what you tell them to do. So how is the district court judge, how did, let me put it this way, how did the district court judge err by doing exactly what you told him to do? Well, I think the judge, I'm not sure he did exactly what we told him to do, but I think he erred because this person was qualified as an expert. He said there was no one before him, no one on the record, who was qualified as an expert when everything about this gentleman's testimony, and it was pointed out to the court, showed that he was a U.S. Coast Guard certified captain, an expert, that travelers considered him that because they allowed him to captain the vessel at one point, that opposing counsel considered that because when they needed a professional captain, they were going to hire him back. So it was no secret to anyone, either of the parties or the court, that Captain McCall was somebody that was qualified to do the job. I mean, he's the person that Plaintiff attempted to hire at the 11th hour to come down and captain the vessel when he knew that the storm was approaching. He knew that the increased hazard was upon him. So is your position that McCall was, or that McCall was an ordinary lay witness with some acknowledged expertise, but was an ordinary lay witness whose testimony was sufficient to carry your burden of showing increased the hazard, Which of those two things is it? A hybrid, Your Honor. On these facts, I don't think that we needed expert testimony to prove that this, that the hurricane approaching and the absence of the captain increased the hazard. And so, so we relied upon Mr. or Captain McCall as a hybrid expert and significant amount of additional, sorry, evidence, including testimony by Captain Dante, the plaintiff's expert, who in another case, in the same district court before the same judge, and this is the serendipity case, which we talked about at great length in our, at great length in our brief, but, but Captain Dante himself said in the, in the serendipity case, the experience of training of a U.S. Coast Guard licensed captain cannot be understated. Had the vessel's owners employed a full-time captain required by the policy warranty, the captain would have been with the vessel and would have been in a possession to, I'm sorry, a position to move it quickly back to a safe port once the threat to the location where it was moored was forecast. In fact, a competent licensed captain would have planned for that contingency. These are the words of Captain Dante, their expert. He went on to say in this serendipity case, which is virtually, factually identical to our case, serendipity being left by its owner in the location where it was moored without a full-time licensed captain placed the vessel in a position where there was no dedicated captain to monitor the approach of the hurricane and make the reasonable decision to return the vessel to a safe port once the threat to the location where it was moored was in the forecast path of evidence. This is their very same expert under virtually identical circumstances saying that under these circumstances you need to have a captain on board. The experience of training of a U.S. Coast Guard licensed captain cannot be understated. The need for that person to be there, they need to be there from the beginning so they can take immediate actions, not last-minute actions that Mr. Golel took of simply tying the boat up in place. Even their own expert, and we call this to the district court's attention. Just in fairness, you've called it to our attention. I think we totally understand your position about their expert. So you're about two minutes over. We'll give you your full-time rebuttal, but let's hear from Mr. Hasselbrock. Thank you, Your Honor. Thank you, Your Honor. May it please the Court. There were always two major issues in this case, choice of law and burden of proof. The parties have known about those issues from day one, and what you see when you look at the history of this case is the travelers put all their proverbial eggs in the admiralty law basket. That's why they filed the case in New York. They're the plaintiff here. Counsel, I will tell you this. You may end up being right, and at least for me, I can only speak for myself, it may be the appropriate thing to affirm here, but this is one of those that doesn't look pretty. In other words, you have a deposition where there's some evidence that seems to suggest that travelers is correct, and you have a report from their expert, which at least meets their summary judgment burden. And I think if there were any fair consideration of that, in my mind, we would reverse. But there are rules, and those rules were not followed here. So to me, this comes down to whether we should enforce those rules here, having balanced things like harmlessness and prejudice under Rule 37c1. That's what this ultimately comes down to for me. And I'm only speaking for myself.  And I appreciate that, Your Honor. I have two things to say about that. First of all, that's why I was directing the Court to the history of this case, because it's clear that travelers went all in on this admiralty law idea. That's why they didn't disclose an expert when the time came. In 2019, you know, this case, they filed in New York. It had been transferred to Florida with the idea that Florida law could apply. In the answer and counterclaim that Ocean Reef filed, the anti-technical statute was raised. Everybody knew this was an issue. Travelers was in a position to be prepared to go forward with its burden of proof under Florida law. But how can you show prejudice, which is something you have to do on your side, where you knew, at least since years before, the exact testimony that would be given at summary judgment? And on the flip side of it, it is, in my opinion, because I believe expert testimony is required here, dispositive of there. So the factors we're supposed to consider under our case law suggest that those are two of them. What's the prejudice to you and what's the harm to the case? And it would seem to me that the prejudice isn't so great for you because you knew and is really, really great for travelers here because they otherwise would win and now they're not going to. Well, I don't think that's true, Your Honor. I think the prejudice was significant. We didn't depose Captain Ahlstrom because he was a rebuttal expert. And so, you know, the case, we filed a motion to strike or limit his testimony the first time around before we came up here on appeal. That was denied as moot because the court applied admiralty law. But everybody knew at that point in time that they had a problem, that they did not have an expert to go forward on the Florida law side of this case. So after we came up here on appeal and got the choice of law worked out and we went back down to address Florida law, they had the opportunity. That's a second bite at the apple. But they never asked the district court to exercise discretion. They never said, let us reopen discovery to deal with this. Let us redesignate the expert. They knew the issue. It had been briefed. It was out there. And they did nothing. All we did was file motions for summary judgment and refile that motion to strike their expert. And it was absolutely predictable where we were going to be after that. The orders that we got simply follow the rules. And so, I mean, I agree with Your Honor in one respect that it may not look the greatest, but that's what rules are for. But I disagree in the sense that I don't think Captain Ahlstrom's report, even if it came in, satisfies their obligation. Explain to me why that's the case. Certainly, Your Honor. Well, if you look at his report, he doesn't do what an expert should do. He doesn't look at these circumstances and express an opinion about this storm and this situation. He says very broadly, the lack of a captain put the vessel at greater risk in September 2017, especially with the special circumstances. That sounds individualized. That sounds on the date of and under these circumstances. Well, but, Your Honor, it isn't. It just says in September 2017, especially with the special circumstances of an approaching hurricane. It's part of what Travelers is doing here to generalize about hurricanes and how captains can be helpful in the sense that, you know, if there's an issue of moving the boat or tying the boat up or whatever, then, yes, there generally may be a greater risk. But that's not how 627409 subsection 2 works, as you pointed out. You have to look at the specific loss. So when you have Pickett v. Woods and you have an airworthiness certificate and you have a plane crash, you don't just get to say. . . I know, but that testimony is not that you just read to me and that I've read in his testimony, isn't if you had a captain, things would be better. It was when this hurricane is approaching, under the special circumstances and the date when this happened, if you had a captain on board, this crash would not have happened. I mean, for summary judgment purposes, that has to get you there. It's not great. I'm not saying you couldn't tear it apart on cross-examination. I'm just saying that all their threshold is, is to present some evidence to establish that it played — not having a captain played some role in the loss. And it seems to me in reading the report that that would get there. I'm not sure that's your strongest argument, that you would win even if we ruled against you on the Rule 37 issue. No, Your Honor, I understand. And it is a secondary argument. Certainly, it's really not even something we briefed because it's really not the question that's before the Court. Again, what Travelers is really asking for is a question about abuse of discretion. Should we have gotten Captain Ahlstrom in the case? And their argument predominantly is we should have gotten a second chance, but they had a second chance, and they didn't ask the Court to exercise that discretion. So they can't come to this Court and ask for relief that they never asked for below. If they had gone to the Court at that point in time that we come back from the appeal and we know we're dealing with Florida law, then, you know, the District Court would have had an opportunity to say, you're right. Let's deal with that issue. We're in a different place now, and you can bring this expert forward. But they didn't even ask. And so to ask this Court now to allow them to do that is absolutely prejudicial. This is a five-year-old loss at this point. Again, when the experts were disclosed, it was almost a year and a half old, and Travelers was the one that filed this case. So they had every opportunity to deal with this issue, and it absolutely would be prejudicial to have to go back and do all that now when the opportunity was there to begin with. I mean, that's what the rules are for. Can I ask a quick jurisdictional issue? And this wouldn't divest us of jurisdiction, but it still is something I have a question about. So as I understand it, the way summary judgment was sought, you sought summary judgment on your counterclaims, correct? I don't know that we were specific about that. I mean, I think we had— I agree you weren't specific. What did the district court say in its summary judgment order that it was granting judgment on? One moment, Your Honor. If you look to the last page, it's there. The district court denied plaintiff's motion for summary—Traveler's motion for summary judgment, granted in part Ocean Reef's motion for summary judgment. As to counts two and three of defendant's counterclaim, the court finds in favor of defendant. What's missing there? As to count one of defendant's counterclaim— Well, that was just the damages, and you all worked it out yourselves, the amount of damages. But what's missing from what's pending? It talks about your counterclaims. What doesn't it talk about? Right. I don't have the counts in front of me, so I don't know. There were five specific counts. There were three counts for declaratory relief, two related to each warranty, one related to a separate provision about the deductible because it was a named storm, a breach of contract count, and an unjust enrichment count. Where is there any mention about any of those? Well, I mean, the court denied Traveler's motion with respect to declaratory judgment action. Right. Doesn't it mean those claims are still pending? Well, I mean, final judgment was entered, Your Honor. Well, I know it says final judgment on the top. I know it says that, but doesn't there have to be some adjudication of the claims for it to actually be a final judgment? Well, I mean, I think that's what the court gave us an opportunity to work out after the summary judgment. So show me where that is. And remember, the key language is what the court said, not what you all said. But what I understood it is the court said, I'm granting you declaratory relief. You have a breach of contract count, but I don't have a damage number. Go back and talk amongst yourselves to see if you can work it out. You did. You came back to the court and said, here's the damage number. Please enter judgment for that amount. Judgment entered for that amount, and then on the top, I agree with you, it does say final judgment. Where was there an adjudication of the claims, the actual claims? Your Honor, I think that the resolution of the counterclaim on the breach of contract issue resolves the declaratory judgment in our favor. So, you know, there's a theory out there that where they're sort of mirror images of each other, you can sort of assume that away. And that might work for you for some of the counts. But there's this other declaratory judgment count for a provision that no one talked about at all, about the named hurricane deductible. I mean, that's still out there. You have to deny it as moot, but it's still out there. And that's not a mirror image of anything. So I just — I'm having trouble understanding how this could be a final judgment, despite what it says on the top of that piece of paper. Well, I'm not sure where that gets us, Your Honor. I mean, Travelers hasn't raised any of those issues as though they're viable claims going forward. Well, jurisdiction is jurisdiction. But I'll say this. Under a separate jurisdictional statute, 922, I think it's 8-3, in maritime cases, which this is, we are allowed to — I think it's called interlocutory decrees that establish the rights and liabilities of the parties. So I don't think it divests us of jurisdiction, but I think it matters for what we do on remand, very much so. And so that's why I'm bracing it with you. Yes. And look, that's an absolutely interesting issue, Your Honor. And again, because it wasn't raised in the briefing, I guess I wasn't fully prepared to address it here. But it's clear to me that, you know, what the district court did here resolved all the issues between the parties. It's also clear to me that Travelers hasn't raised those issues. There really isn't anything to deal with in the district court. So the judgment is the judgment. It's final. It says final, whether there might be some claim out there that we didn't fully contemplate in writing in that judgment. It says final because everyone believed it to be final. There's really nothing left to do other than decide here, did the court — district court get it right in the orders that were entered? If you win, the deductible would seem to matter a lot. I'm sorry, Your Honor? If you win, the deductible amount would seem to matter a lot. But that was something that was considered and resolved with the parties entering a final judgment on damages, I believe, Your Honor. I just wanted to speak briefly about Captain McCall. You know, he was obviously a fact witness. He could testify factually as to what happened, was not disclosed as an expert, and the court was exactly right, not in a position to answer the hypothetical. But to the extent that he was, he did answer it because he very clearly said he didn't see a place to move the boat to avoid the storm. And that's exactly why, you know, ultimately it wasn't moved. But importantly, because this was a — I'm not sure that's 100 percent right. I don't. Again, I think if this was admitted, it could be problematic for you. I'll look at page 36 of the deposition at CMECF, page 11. Question. Would you consider it standard practice to move vessels as far as two or three states to prepare for a storm like a hurricane? Answer. Under certain circumstances, yes. Under certain conditions, yes. Question. And what conditions? Answer. If a hurricane was going to directly impact Florida, I would want it to at least be past the Florida-Georgia line. Question. Why? Answer. Because the winds and conditions don't extend out that far. Yes, Your Honor. First of all, of course, the admissibility issue, that's not admissible testimony. I understand that. But beyond that, this is a different storm. He's talking about that generally, and he says later, I believe, in that deposition, I can't quote you chapter and verse here in terms of the lines, but I believe he talks about this storm looking like it's going to track up the coast, and they couldn't have just run up the coast with this boat and necessarily avoided it. So it's not clear to me that even under a very different set of circumstances that he would have made that decision in this particular case. In fact, he says, I believe clearly, that he looked at the storm and didn't think that was possible. So. All right. So let's look at page 70 of the deposition. Are we past time yet? No. Okay. Let's look at page 70 of the deposition. Did you have any plan on what to do with the vessel at that time? In other words, if Mr. Golel had asked you to come down. Answer. Yes, I was going to move it to wherever marina that he had talked to because I was assuming that he was going to have it hauled. Question. If the vessel couldn't be hauled, was there an alternative plan in your mind? Answer. I would have to see the situation determined. Question. Would you leave the vessel like the My Lady tied to a concrete bulkhead during the storm that was anticipated? Question. If that was the only option, yes. Can you indicate that his plan was to send it to a marina if possible? Right, but we don't know that there was a marina available. I mean, a lot of boats are going to be looking for those options. That's the whole problem. If we have an expert looking at this and then giving that testimony, we can talk about what a Captain Wooder wouldn't have done under the circumstances. He can only talk factually about what actually happened, and that's what he's saying. But a lot of that is speculation. He doesn't know if there's a marina spot. He doesn't know. He might have ended up tying it up just the way that Mr. Golel did. And there's no dispute about that. There's been no dispute in the record that what he did to secure the boat in the place that it was in was absolutely up to the standard of care. There's no discussion about that. Really, the loss is because that concrete piling failed, and that's what we come back to at the end of the day. All this is superimposed on the fact that this boat would have been fine if that concrete piling doesn't fail. This isn't just a hurricane loss. It's a failure of that piling. But, Your Honor, because I'm out of time here, I just want to close quickly. You know, travelers had an easy burden, but they chose not to meet it when they didn't disclose an expert, and they went all in on this admiralty law argument. The district court got it right in only requiring a causal connection, but ultimately finding that even travelers couldn't meet that minimal burden, and we ask that the court affirm. Thank you very much, Mr. Hassebrock. Mr. Valdez, you've got three minutes remaining. And if you could, just before the clock starts, as part of your three minutes, would you just address kind of his top line point that, you know, on remand from us, you know Florida law is going to apply. I'm not asking you to divulge client confidences, of course, but there was a simple fix. Ask the district court to put matters on ice and designate an expert. Your Honor, I think that in essence they did that. They certainly could have been — there certainly could have been a more formalistic request. Well, it's hardly — But they did request. It's hardly formalistic to designate an expert. But no, Your Honor, and I think the way I stated it probably wasn't the best way. There was discussion on the motion to strike about the fact that Captain Ahlstrom should be allowed to testify, and the position that they were taking was, you know, particularly given these changing circumstances, he should be allowed to testify. So I think that they did ask the court in arguing against the motion to strike him. They said, Judge, you really, at this point, you really should consider what Captain Ahlstrom has to say. And if they had considered what Captain Ahlstrom had to say, that would have gotten us past summary judgment. And switching back from that for a second, I know that the idea of a causal link is what you're focused on, Judge Luck, when you say that we need expert testimony. But under this substantive Florida law, there's no other case that deals with the anti-technical statute that even mentions causation. Isn't it sort of baked in, though? I mean, like, I just, you know, the statutory phrase is increase the hazard. If you go and look in dictionaries, lots of them, you know, for increase, most of them, you know what most of them say? Cause to wax or grow or something like that. It just seems like they're just inextricably intertwined to me. Increase the hazard is a much lower burden than caused the ultimate event. You know, this is a much lower burden than had to be made. I don't know that anyone disagrees with that. But I think there's a difference. You sort of slighted language there. You started off by saying causal link. There clearly has to be a causal link under Florida law. Does it have to be direct and proximate cause? No, I don't believe it does. But the question is, if there does have to be some showing, doesn't that speculative, conjectural, hypothetical showing have to be done exactly through expert testimony under our law? And I would say, Your Honor, no, particularly when dealing with this statute where there are numerous cases that are on point that have found that particular items did not increase the hazard without any reference to expert testimony. And I would call to the Court's attention Great Lakes Reinsurance v. Rosen, the Southern District of Florida case from 2010. Show me a Florida state case. A Florida state case. That says a lot, Your Honor. That says what you're saying. Well, the point I think I'm trying to make is no Florida case. Don't tell me Florida court and then cite me a district court case. We are required to apply Florida law as a Florida court, state court would apply it. I understand that, Your Honor. And every one of the Florida cases cited in the brief, if you look at every one of them, there's not a single one that says that expert testimony is required to show that there's an increase in the hazard. They all rely on factual testimony and they all rely on sort of there's a common sense approach that's employed in all of these Florida cases. They do not require expert testimony in this. And I cited Great Lakes Reinsurance v. Rosen because I think it had a good discussion of Florida case law and what the statute is about. And, you know, what this, and in Rosen, the court went through applying Florida law and found six or seven different factors, six or seven different pieces of evidence that were put before it that established that the violation of the warranty there increased the hazard. And none of those things were expert testimony, just like none of the Florida cases that deal with this have required expert testimony to prove this substantive point in the statute. And in essence, Your Honor, we're asking the Court to reverse the final judgment that the district court entered in Apelli's favor in this case. Apelli wagered that he could ignore material warranties, captain and crew warranty, that it agreed to without any consequence because it believed that there would be, that the chance of a hurricane was minimal and or that in the event of a hurricane it, or in this case he, Mr. Golel, would be able to secure a temporary captain in time to move the vessel to a safer location. He was wrong. We see the great lengths he went to trying to move the vessel. And, you know, this gentleman that is characterized by Captain Dante as a seasoned seaman, when it's, you know, when it's good for them, he knew it was the right thing to do to move it. Everybody knew it was the right thing to do it. Travelers wouldn't even have written this policy if he had, if he had not had a captain. They wouldn't have written any policy north of, north of Cape, or south of Cape Cod during hurricane season without a captain. So to say that this is not a material provision, that this is somehow a technicality that travelers is trying to get off on is, is just wrong. Okay, I think, I think we're beyond answering questions and now just redoing the argument. So you're about three minutes over. I'll ask you to, you know, take 15 seconds if you want to, to wrap up. I'll wrap it up, Your Honor. Apelli was wrong in this case. They lost their ill-advised gamble by breaching the substantive material warranties. They increased the hazard to the vessel by those breaches, and now they seek to avoid the consequences and shift their losses to travelers. For that and all the reasons we've discussed, travelers would ask the Court to reverse. Okay, very well. Thank you both. Thank you, Your Honor. That case is submitted.